UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
ANTHONY FEURTADO,

                    **MEMORANDUM AND ORDER**
           Plaintiff,                **04-CV-3405 (NGG)(LB)**

   v.

NEW YORK CITY DETECTIVE GILLESPIE;        **NOT FOR PUBLICATION**
LIEUTENANT STEVEN DATO;
POLICE COMMISSIONER RAYMOND W.
KELLY; AND DEPUTY INSPECTOR
BRIAN O'NEILL

              Defendants.
-------------------------------------------------------X
GARAUFIS, United States District Judge.

      Anthony Feurtado ("Plaintiff"), acting <u>pro se</u>, brings this action pursuant to 42 U.S.C. §§

1983 and 1985 alleging federal civil rights violations committed by Police Commissioner

Raymond Kelly, Deputy Inspector Brian O'Neill, retired New York City Police Department

("NYPD") Detective William Gillespie,[1] and retired NYPD Lieutenant Steven Dato

("Defendants"). At this time, the court considers the Defendants' motion to dismiss the

complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons

that follow, the Defendants' motion is granted in part and denied in part.

**I.**     **Background**

      The facts as alleged in the complaint are deemed to be true for the purposes of this

motion. On or about September 24, 1994, the Plaintiff was staying with his family at a Ramada

Inn in New Jersey. NYPD Detectives Gillespie and Dato followed the Plaintiff from LaGuardia

---

[1] Defendants assert upon information and belief that Detective William Gillespie has not
been served with the Summons and Complaint in this action. To the extent that Gillespie has
been properly served in this action, this Memorandum and Order is applicable to him.

Airport to the hotel and seized his credit card information from the hotel desk clerk without a warrant or subpoena. (See Plaintiff's Response in Objection to Defendant's Motion to Dismiss ("Pl.'s Resp.") Ex. A (Plaintiff's Affidavit)). The credit card information seized led to the indictment and subsequent September 28, 1995 arrest of the Plaintiff in federal criminal case docket number 95-CR-669 ("case 95-CR-669") in the United States District Court of South Carolina. (See Amended Complaint ("Am. Compl.") at 3). At a March 27, 1996 evidentiary hearing held by the South Carolina district court in connection with case 95-CR-669, Detectives Gillespie and Dato made false statements under oath. (Am. Compl. at 3-4).

The procedural background of this case requires a brief discussion. The Plaintiff filed this 42 U.S.C. § 1983 action on August 10, 2004. This court dismissed the Plaintiff's action sua sponte by Memorandum & Order ("M&O") dated September 9, 2004. The court determined that the Plaintiff failed to state a cause of action under Section 1983 because he had not alleged that the charges against him terminated in his favor, a pre-requisite to maintaining his action. See Heck v. Humphrey, 512 U.S. 477 (1994). The court determined that the Plaintiff had in fact pled guilty to the charges and that his conviction had been affirmed  The court further determined that Defendants Gillespie and Dato were absolutely immune from liability for any testimony given, irrespective of the truthfulness of their testimony, under the Supreme Court case of Briscoe v. LaHue, 460 U.S. 325 (1983). (See M&O dated September 9, 2004).

The Plaintiff then moved to Alter or Amend the court's September 9, 2004 Order, pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, claiming that I had misapprehended the facts of the case in my decision. The Plaintiff explained in his motion papers that he had pled guilty not to case 95-CR-669, but rather to federal criminal case docket

number 96-CR-325 ("case 96-CR-325").  Recognizing the mistake, I reconsidered the order and found the reasoning in the September 9, 2004 M&O to be misplaced.  Nonetheless, I dismissed the Plaintiff's claim, pursuant to 28 U.S.C. § 1915A, as time barred under the applicable statute of limitations.  (See M&O dated October 22, 2004).  Again, the Plaintiff moved to Alter or Amend the October 22, 2004 Order, arguing that the statute of limitations did not bar his claim because it had not accrued, but rather had been tolled, until June 17, 2002 when the Fourth Circuit affirmed his conviction on appeal.  In an M&O dated November 29, 2004, I determined that the Plaintiff's action could proceed and directed that the case be reopened to allow the "benefit of discovery to establish the facts of the case."  Subsequent to this order, the Defendants investigated the circumstances of cases 95-CR-669 and 96-CR-325, and the Plaintiff's appeals thereof.  The facts which follow are now before the court and are not in dispute.

The Plaintiff was arrested on or about September 28, 1995.  On October 18, 1995, he was indicted in case 95-CR-669 on charges of (1) conspiracy to distribute narcotics; (2) continuing criminal enterprise; and (3) the sale, distribution, or dispensation of narcotics.  (See Pl.'s Resp. Ex. C (95-CR-669 indictment)).  On March 27, 1996, an evidentiary hearing was held in case 95-CR-669 concerning improper testimony that may have been before the Grand Jury in the indictment of case 95-CR-669.  Following the hearing, the United States District Court of South Carolina dismissed the indictment in case 95-CR-669 without prejudice and ordered the criminal defendants (including the Plaintiff) to "remain in custody for a period of 45 days pending reindictment by the Grand Jury."  (See Plaintiff's Sur-Reply Memorandum of Law in Further Support of His Objection to Defendant's Motion to Dismiss ("Pl.'s Sur-Reply") Ex. A) (excerpts of hearing transcript)).  One week later, on April 3, 1996, the Grand Jury issued a new

indictment against the Plaintiff that was docketed as criminal case 96-CR-325. (See Pl.'s Resp. Ex. C (case 96-CR-325 indictment)). On July 9, 1996, the Government sought and received a superseding indictment in case 96-CR-325. Both the initial and superseding indictments in case 96-CR-325 included the original three charges in case 95-CR-669 along with several other charges. (See Defendants' Notice of Motion ("Defs.' Mot.") Ex. H).

On January 14, 1997, the Plaintiff pled guilty in case 96-CR-325 to one count of conspiracy to possess with intent to distribute and to distribute crack cocaine and one count of money laundering. See United States v. Feurtado, 39 Fed. Appx. 812, 813 (4th Cir. 2002) (stating the counts to which Feurtado pled guilty). The Plaintiff was sentenced on October 9, 1997 and subsequently filed several motions and appeals in cases 95-CR-669 and 96-CR-325. See United States v. Feurtado, 191 F.3d 420 (4th Cir. 1999). The Plaintiff's conviction and sentence were affirmed by the Fourth Circuit and his writ of certiorari was denied by the Supreme Court. See United States v. Feurtado, 39 Fed. Appx. 812, 2002 U.S. App. LEXIS 3459 (Mar. 5, 2002), cert. denied, 537 U.S. 986 (2002). The Plaintiff's Section 1983 claim seeking damages in excess of $25 million ensued.

On June 10, 2005, the Defendants filed the instant Rule 12(b)(6) Motion to Dismiss urging that the Plaintiff's claims be dismissed for failure to state a cause of action upon which relief can be granted. This M&O will address the sufficiency of the Plaintiff's constitutional claims.

## II. Legal Standard

In considering this motion, the court is aware that because the Plaintiff is proceeding pro se, it is "obliged to construe [his] pleadings and papers liberally." LaBounty v. Adler, 933 F.2d

121, 122 (2d Cir. 1991).  Indeed, a <u>pro se</u> litigant's submissions are to be interpreted "to raise the strongest arguments they suggest."  <u>Burgos v. Hopkins</u>, 14 F.3d 787, 790 (2d Cir. 1994).

In determining a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor.  <u>Grandon v. Merrill Lynch & Co.</u>,147 F.3d 184, 188 (2d Cir. 1998).  A court should not dismiss a complaint for failure to state a claim unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957).  The question to be answered is not whether the Plaintiff will ultimately prevail on his claim, but whether the Plaintiff is entitled to offer evidence in support of the allegations contained in the complaint.  <u>Hamilton Chapter of Alpha Delta Phi, Inc. v. Hamilton Coll.</u>, 128 F.3d 59, 62 (2d Cir. 1997).

Although the defendants have moved to dismiss the claims pursuant to Rule 12(b)(6), a court may convert a 12(b)(6) motion to dismiss into a motion for summary judgment pursuant to Rule 56 when "matters outside the pleading are presented to and not excluded by the court."  Fed. R. Civ. P. 12(b).  Here, both the Defendants and the Plaintiff have submitted exhibits and affidavits outside the pleadings for the court's consideration.

In order for this court to convert Defendants' motion into one for summary judgment, Rule 12(b) requires that the Plaintiff be given sufficient notice of the court's intention to do so.  <u>See</u> Fed. R. Civ. P. 12(b); <u>see also</u> <u>In re G. & A. Books, Inc.</u>, 770 F.2d 288, 294-5 (2d Cir. 1985).  Although adequate notice is mandatory, the conversion process is "governed by principles of substance rather than form."  <u>Books</u>, 770 F.2d at 295.  "The essential inquiry is whether the [opposing party] should reasonably have recognized the possibility that the motion might be

converted into one for summary judgment or was taken by surprise and deprived of a reasonable opportunity to meet facts outside the pleadings.  Id.; see also Corcoran v. New York Power Authority, 935 F.Supp. 376, 383 (S.D.N.Y. 1996).

I am mindful in the present case of the fact that the Plaintiff is a pro se litigant and that "'[n]otice is particularly important when a party is proceeding pro se and may be unaware of the consequences of his failure to offer evidence bearing on triable issues.'" Corcoran, 935 F.Supp. at 383 (quoting Beacon Enterprises, Inc. v. Menzies, 715 F.2d 757, 767 (2d Cir. 1983)). "However, a 'party cannot complain of lack of reasonable opportunity to present all material relevant to a motion for summary judgment when both parties have filed exhibits, affidavits, counter-affidavits, depositions, etc. in support of and in opposition to a motion to dismiss.'" Smith v. Redound Indus., Inc., 1997 WL 103939, *1 (E.D.N.Y. 1997) (quoting Books, 770 F.2d at 295).  Here, both the Defendants and the Plaintiff have submitted exhibits with their motion papers.  The Defendants have submitted copies of previous Orders of this court and of the Plaintiff's previous motions to alter or amend those Orders; copies of the criminal dockets for the underlying criminal cases; an excerpt from a brief submitted by the Plaintiff to the Fourth Circuit on his appeal of case 96-CR-325; and the affidavit of an Assistant United States Attorney in the District of South Carolina who worked on the Prosecution of that case.  (See Defs.' Exs. A-K).  The Plaintiff has also submitted several exhibits, including a personal affidavit; excerpts of transcripts from the March 1997 evidentiary hearing; copies of the indictments in the underlying criminal cases; excerpts from the testimony of Charles McNair given before the Grand Juries on October 18, 1995 and April 3, 1996; an excerpt from the docket sheet for case 96-CR-325; and a copy of the Government's responsive brief in opposition to the Plaintiff's

motion for re-sentencing in the District of South Carolina.  (See Pl.'s Ex. A-E).

Based on these submissions, it is fair to conclude that the Plaintiff had sufficient notice that this court would consider extraneous materials and that he had a reasonable opportunity to submit facts outside the pleadings.  See Books, 770 F.2d at 295; Smith, 1997 WL 103939 at *1. Conversion of Defendants' motion to dismiss into a motion for summary judgment is therefore appropriate and material outside the pleadings is properly considered by this court.  The Defendants will prevail on summary judgment only if, with all ambiguities resolved and all reasonable inferences drawn against the Defendants, there is no genuine issue as to any material fact and the Defendants are entitled to judgment as a matter of law.  See Flanigan v. General Elec. Co.,  242 F.3d 78, 83 (2d Cir. 2001).

## III.    Discussion

### A.    Plaintiff's Section 1983 Claim

#### 1.    Plaintiff's False Arrest Claim is Barred Because He Was Convicted on the Underlying Charges

The South Carolina District Court dismissed the indictment against the Plaintiff in case 95-CR-669 because of tainted evidence presented to the grand jury assigned to the matter.  The court ordered that the Government seek a new indictment based on proper evidence, excluding the evidence found to be tainted at the March 27, 1996 evidentiary hearing.  A different grand Jury issued an indictment, on April 3, 1996, based on the same evidence presented to the 95-CR-669 grand jury – *minus the excluded evidence* – and the new case stemming from the second indictment was assigned docket number 96-CR-325.  Case 95-CR-669 was dismissed with prejudice, and the Plaintiff ultimately pled guilty in case 96-CR-325.

The Plaintiff now argues that he has a viable section 1983 false arrest claim[2] arising out of case 95-CR-669 because that case terminated in his favor. (See Pl.'s Resp. at 5-12). The Government contends, to the contrary, that case 96-CR-325 and the Plaintiff's plea of guilty in that case is sufficiently linked to case 95-CR-669 such that the Plaintiff's Section 1983 claim for damages is barred. (See Defendants' Memorandum of Law in Support of their Motion to Dismiss ("Defs.' Memo") at 7-12).

To maintain a cause of action under Section 1983 for false arrest, a plaintiff must show that (1) defendant intended to confine plaintiff; (2) plaintiff was conscious of the confinement; (3) plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged. See Weyant v. Okst, 101 F.3d 845, 852-3 (2d Cir. 1996). A showing of probable cause, however, will defeat a false arrest claim as a matter of law as "[t]here can be no federal civil rights claim for false arrest where the arresting officer had probable cause." Singer v. Fulton County Sheriff, 63 F.3d 110, 118-19 (2d Cir. 1995); see also Weyant, 101 F.3d at 852. Probable cause is determined based upon the totality of the circumstances at the time of the arrest. See Bernard v. United States, 25 F.3d 98, 102 (2d Cir. 1994). In some cases, however, an examination of the totality of information known to the arresting officer at the time of arrest is not required. When a Section 1983 plaintiff is convicted after trial on the underlying charge, see Cameron v. Fogarty, 806 F.2d 380, 388- 89 (2d Cir. 1986), or when a plaintiff pleads guilty to the underlying or a lesser charge, see Roundtree v. City of New York, 778 F.Supp. 614, 618 (E.D.N.Y. 1991), these facts *alone* provide sufficient evidence that probable cause existed at the

---

[2] As will be discussed infra at Part III.A.2, the Plaintiff's Amendment Complaint does not clearly indicate whether his first cause of action alleges false arrest or a Fourth Amendment illegal seizure claim. Both claims will be addressed in this M&O.

time of the arrest and preclude a false arrest claim under Section 1983. See Thomas v. Roach, 165 F.3d 137, 144 (2d Cir. 1999); Button v. County of Queens Police Dept. 110 Precinct, No. 94 Civ. 2675, 1996 WL 738525, *2 (E.D.N.Y. Dec. 23, 1996) ("Simply, federal courts, in false arrest actions under section 1983, should not be burdened with a collateral estoppel factual inquiry in the face of a guilty plea[.]"); People v. Thomas, 53 N.Y.2d 338, 344 (N.Y. 1981) (under New York law a plea of guilty serves as a conviction).

The law is clear: if the plaintiff in a civil rights action alleging false arrest is convicted by trial or through plea of the underlying charge, his Section 1983 action must be dismissed. In the present case, however, the facts are less straightforward.

The Plaintiff alleges false arrest in connection with case 95-CR-669, which was dismissed. Thus, there seemingly was no conviction on the underlying charge and the Plaintiff's claim should not be summarily dismissed. However, the Plaintiff pled guilty in case 96-CR-325. The Defendants argue that because cases 95-CR-669 and 96-CR-325 arose from the same set of facts and charged the Plaintiff with the same criminal conduct, the Plaintiff's guilty plea in case 96-CR-325 ought to bar his Section 1983 claim grounded on his arrest in case 95-CR-669. The court agrees.

In Heck v. Humphrey, the Supreme Court put forth the law governing Section 1983 claims for damages that attack the validity of arrests or prosecutions. The Court explained:

> We hold that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not

9

cognizable under § 1983.

Heck v. Humphrey, 512 U.S. 477, 486-7 (1994) (emphasis in original).  The Heck Court directed that district courts "must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence."  Id.  The Defendants' position is that a judgment in favor of the Plaintiff in the instant false arrest action based on case 95-CR-669 would imply the invalidity of his conviction by guilty plea in case 96-CR-325 because that conviction is so closely related to the charges in case 96-CR-669.

I have found no case law that has dealt with an analogous situation as the one presented here – i.e. a collateral attack of an arrest based on a dismissed indictment where there has been a conviction on a second indictment charging the same crimes.  However, district judges in this circuit have decided cases that provide guidance.  See Frazier v. Woods, No. 96 Civ. 7813, 1998 WL 146231 (S.D.N.Y. March 25, 1998) (Keenan, J.); Berman v. Turecki, 885 F.Supp. 528 (S.D.N.Y. 1995) (Leisure, J.).  In Frazier, the plaintiff brought a Section 1983 claim for false arrest stemming from a stop by New York City Police Officers for traffic violations.  The plaintiff was pulled over and ultimately arrested because she did not have a license or any form of picture identification on her when she was pulled over.  Frazier, 1998 WL 146231 at *1-2.  She was issued twelve traffic summonses, and at a subsequent hearing on the violations she was convicted of five of the twelve violations.  Id. at *2.  The district court held that the plaintiff's false arrest claim was barred based on the five convictions.  The court stated:

> While [plaintiff] was not convicted on all 12 traffic violations, the fact that she was convicted on five establishes that there was probable cause to issue her summonses for the other seven offenses and precludes her maintaining her false arrest claim on any of the twelve for which she was charged.  *This is because all twelve charges were closely related, stemming from the same facts and type of conduct* – Plaintiff's driving.

Id. at *4 (emphasis added). As this passage suggests, the relevant inquiry is whether the charges were so closely related that a finding of probable cause as to one or more charges mandates an analogous finding as to the other charges.

In a second case, the district court characterized the inquiry using slightly different terminology. In Berman, the Plaintiff attempted to draw a distinction under Heck between charges of blackmail and distortion (that were dismissed), and a charge of possession of firearms as a convicted felon (to which he pled guilty). "[The plaintiff] contend[ed] that Heck should apply only to the latter charge, and not to former ones, which he consider[ed] to have been terminated in his favor." Berman, 885 F.Supp. at 532 n. 9. The court, however, found the charges to be "inextricably intertwined" and held that to allow a claim on the dismissed charges to go forward would "[e]ffectively. . . constitute a collateral attack on [plaintiff's] conviction through the vehicle of a civil suit, which is exactly the outcome Heck sought to prevent." Id.

In the instant action, the Plaintiff's indictment and arrest in case 95-CR-669 was based on the same facts, occurrences, and evidence as the subsequent indictment and arrest in case 96-CR-325. These arrests are "inextricably intertwined" such that a finding of false arrest in case 95-CR-669 would "necessarily imply the invalidity" of the Plaintiff's conviction in case 96-CR-325, see Heck, 512 U.S. at 486-7, and would therefore constitute an impermissible collateral attack on the Plaintiff's conviction through a civil suit. See Berman, 885 F.Supp. at 532 n. 9.

My determination that Plaintiff's conviction in case 96-CR-325 bars his false arrest claim arising from case 95-CR-669 is based on evidence in the record that establishes that because these two arrests are so closely related, the Defendants had probable cause as a matter of law to arrest the Plaintiff in case 95-CR-669. First is the fact that the indictment in case 96-CR-325

contained the three crimes originally charged in the 95-CR-669 indictment.  Second,  the

Plaintiff was specifically held in custody following the dismissal of case 95-CR-669 in order for

a new Grand Jury to issue a new indictment.  This strongly suggests that the facts underlying the

two indictments were the same.  Indeed, this is confirmed by the fact that the second indictment,

issued only one week after the dismissal in the first case, was based on the very same evidence

presented to the first grand jury, save for the tainted evidence that was removed from the

transcript.  From this, the only reasonable inference to be drawn is that the two indictments

"stemm[ed] from the same facts and type of conduct."  See Frazier, 1998 WL 146231 at *4.

Finally, Mark Moore, an Assistant United States Attorney ("AUSA") in the District of

South Carolina, and Chief of the Narcotics Section of the United States Attorney's Office for

that district, has provided testimony to support the finding of interrelatedness between cases 95-

CR-669 and 96-CR-325.  (See generally Moore Affidavit ("Aff.")).  Through a sworn affidavit

submitted in support of Defendants' Motion to Dismiss, Moore testifies that he was one of the

AUSAs who prosecuted the Plaintiff in case 96-CR-325.  (Moore Aff. ¶ 2).   Moore attests,

based on his review of the case file, his understanding of the Plaintiff's action, and his

involvement in the criminal prosecution of the Plaintiff, that "[f]ederal criminal case 96-CR-325

stems from, and is linked to, federal criminal case 95-CR-669."  (Id. ¶ 4).  Moore further attests:

"Federal criminal case 96-CR-325, upon which plaintiff Feurtado pled guilty, involves the same

charges and evidence as federal criminal case 95-CR-669." (Id. ¶ 5).  He states that the "charges

and circumstances underlying Feurtado's September 28, 1995, arrest is entirely related to his

conviction upon plea of guilty in 96-CR-325."  (Id. ¶ 7).

Based on this evidence, I find that the Plaintiff is estopped from bringing a false arrest

claim arising from case 95-CR-669 notwithstanding the dismissal of that indictment. As a result

of the Plaintiff's conviction in case 96-CR-325, the crimes of which stem from the same facts

charged in case 95-CR-699, the Plaintiff cannot prove that Defendants lacked probable cause

when they arrested him. Thus, Defendants are entitled to judgment as a matter of law and the

Plaintiff's Section 1983 false arrest claim is dismissed.

**2.      Plaintiff's Claim for Damages Based on Illegal Seizure of his Credit
Card Information Cannot Withstand Defendants' Motion to Dismiss**

Although the Government characterizes the Plaintiff's first cause of action as one for

false arrest,[3] the Plaintiff also argues that he was subject to an independent constitutional

violation when the Defendants obtained his credit card information from the Ramada Inn desk

clerk without a warrant or subpoena. The Plaintiff asserts that Defendants conducted an

impermissible seizure in violation of the Fourth Amendment when they seized this information.

(See Am. Compl. at 3; Pl.'s Resp. at 10).

The Amended Complaint states the first cause of action as follows:

> Plaintiff contends that his rights were violated when detective Gillespie and
> Lieutenant Dato, in conjunction with their superiors at the New York City Police
> Department, acting as deputized federal agents followed Plaintiff from New
> York City to the Ramada Inn Hotel in New Jersey and illegally seized Plaintiff's
> credit card information from the hotel clerk without a warrant, which lead [sic]
> to Plaintiff being indicted and arrested in federal criminal case number 95-669 in
> the United States District Court of South Carolina.

(Am. Compl. at 3). Given that the Plaintiff is pro se, this court is obligated to liberally construe

his pleadings. See LaBounty, 933 F.2d at 122. The Plaintiff seems to allege a privacy violation

---

[3] Indeed, the Plaintiff has effectively conceded that he has brought a false arrest claim by
arguing against Defendants' motion to dismiss the claim on the merits. (See generally Pl.'s
Resp.).

13

in connection with this seizure, and thus, to the extent that the Plaintiff alleges the improper

seizure of credit card information as the basis for a claim of damages under Section 1983, that

claim will now be addressed.

To begin, the court notes that it is possible, under <u>Heck</u>, to award damages under Section

1983 for a Fourth Amendment violation without implying the invalidity of a plaintiff's

conviction.  The <u>Heck</u> Court explained as much in a footnote:

> For example, a suit for damages attributable to an allegedly unreasonable
> search may lie even if the challenged search produced evidence that was
> introduced in a state criminal trial resulting in the § 1983 plaintiff's
> still-outstanding conviction. Because of doctrines like independent source
> and inevitable discovery, and especially harmless error, such a § 1983
> action, even if successful, would not necessarily imply that the plaintiff's
> conviction was unlawful.

<u>Heck</u>,  512 U.S. at 487 n.7 (internal citations omitted).  Notwithstanding the above statement,

recovery under Section 1983 for such a Fourth Amendment violation is conditioned upon

plaintiff's proof of actual injury apart from his conviction and imprisonment.  The Court

explained:

> In order to recover compensatory damages, however, the § 1983 plaintiff
> must prove not only that the search was unlawful, but that it caused him
> actual, compensable injury, which, we hold today, does not encompass the
> "injury" of being convicted and imprisoned (until his conviction has been
> overturned).

<u>Id.</u> n.7 (citing <u>Memphis Cmty Sch. Dist. v. Stachura</u>, 477 U.S. 299, 308 (1986)).

Even assuming <u>arguendo</u> that the Defendants violated the Plaintiff's Fourth Amendment

right and conducted an unreasonable and therefore illegal search when they seized the Plaintiff's

credit card information,[4] the Plaintiff has failed to allege actual, compensable injury – apart from

his arrest and indictment – sufficient to sustain his Section 1983 action. The Plaintiff's

complaint asserts that the illegal seizure "lead [sic] to Plaintiff being indicted and arrested" in

cases 95-CR-669 and 96-CR-325. (Am. Compl. at 3). He indicates no other injury sustained

and requests a damages award in excess of $25 million for "actual, nominal, compensatory,

punitive and exemplary monetary damages . . ." (Am. Compl. at 4). Construing the complaint

liberally, the only reasonable inference to draw is that the Plaintiff's asserted injury is his arrest

and indictment. As I have already determined that the Plaintiff's arrest in case 95-CR-669 has

not been "overturned" due to his conviction in the related case 96-CR-325, the Plaintiff's illegal

seizure claim is squarely barred by the Supreme Court's holding set forth in Footnote 7 of Heck.

See Heck, 512 U.S. at 487 n.7.

Second Circuit precedent also forecloses the Plaintiff's claim on the grounds that he has

failed to set forth facts which would establish compensable injury as required by Section 1983.

In Townes v. City of New York, 176 F.3d 138 (2d Cir. 1999), the Second Circuit considered a

plaintiff's Section 1983 claim alleging a Fourth Amendment violation arising from a police stop

of a taxicab in which the plaintiff was a passenger. There, the police stopped the cab and

proceeded to search the plaintiff, Townes, and the cab. Inside the cab, a handgun was found and

Townes was subsequently arrested, convicted upon a plea of guilty and incarcerated. Townes,

---

[4] At this time, the court makes no ruling on the issue of whether the Plaintiff enjoyed a reasonable expectation of privacy in his credit card information such that his Fourth Amendment right to be free from unreasonable search and seizure was violated when the Defendants obtained this information from the hotel clerk.

176 F.3d at 141.⁵ His conviction was reversed more than two years later upon a finding that the police had lacked probable cause to stop the taxi. Id. at 142.

On defendants' 12(b)(6) motion, the Second Circuit dismissed Townes's Section 1983 claim on the grounds that "the injury he pleads (a violation of the Fourth Amendment right to be free from unreasonable searches and seizures) does not fit the damages he seeks (compensation for his conviction and incarceration)."⁶ Id. at 147. The court explained that the purpose underlying Section 1983 damages is to provide money damages to persons who have suffered injuries caused by the deprivation of constitutional rights. See id. at 147-8. Civil actions brought pursuant to Section 1983 are akin to state common law tort actions in that their objective is compensation. Thus, as Townes held, the doctrine of the "fruit of the poisonous tree," which is an evidentiary rule utilized in the criminal procedure context, does not operate in a Section 1983 claim and "cannot link the unreasonable seizure and search to [a Section 1983 plaintiff's] conviction and incarceration . . ." Id. at 145.

Townes is directly on point with respect to the case currently before the court, and it is controlling. As was true in Townes, in the present action there is a "gross disconnect" between the asserted violation of the Fourth Amendment right to be free from unreasonable searches and

_____

⁵ Once arrested, Townes was again searched, at which time cocaine was found on his person. Townes's motion to suppress the handgun and drugs was denied, and he ultimately pled guilty to weapons-possession and drug-possession charges. More than two years later, the Appellate Division found that the police had lacked probable cause to stop the taxi, and reversed Townes's conviction. Townes's Section 1983 claim ensued. See Townes, 176 F.3d at 142.

⁶ Townes's claim was dismissed also on a second independent ground: that the Defendants' conduct was not the proximate cause of Townes's injury because the trial court's failure to suppress the evidence had constituted a superseding cause of Townes's conviction and imprisonment. Townes, 176 F.3d at 147.

seizures and the injury of conviction for which the Plaintiff seeks monetary recovery. Id. at 148.

"The evil of an unreasonable search or seizure is that it invades privacy, not that it uncovers

crime, which is no evil at all." Id. The Plaintiff here has alleged no privacy damages arising

from the allegedly illegal seizure. Therefore, his Section 1983 claim on this basis cannot

withstand the Defendants' Motion to Dismiss. The Second Circuit has succinctly stated the

controlling law:

> Victims of unreasonable searches or seizures may recover damages directly
> related to the invasion of privacy–including (where appropriate) damages for
> physical injury, property damage, injury to reputation, etc.; but such victims
> cannot be compensated for injuries that result from the discovery of
> incriminating evidence and consequent criminal prosecution. In this manner,
> the penalty for the violation is . . . likely to be at least roughly proportional to
> the wrong done by the violator.

Townes, 176 F.3d at 148 (internal quotation and citation omitted). Assuming arguendo that the

Plaintiff has been the victim of an unreasonable seizure, he nonetheless cannot be compensated

under Section 1983 for the injury he alleges, viz. that the illegal search led to his indictment and

arrest. See id. at 149 (reversing denial of Defendants' motion to dismiss); McDermott v. City of

New York, 2002 WL 265127, No. 00-Civ-8311 (S.D.N.Y. Feb. 25, 2002) (Gorenstein, Mag. J.,

Report and Recommendation) (noting in dismissal of certain of plaintiff's Section 1983 claims

that "[t]his case is controlled by Townes").[7]

Thus, to the extent that the Plaintiff's only injury arising from his alleged fourth

amendment violation was his arrest and indictment, the Defendants are entitled to summary

---

[7] The Report and Recommendation was adopted by the District Court (Kaplan, J.). See McDermott v. City of New York, 2002 WL 561079, No. 00 CIV. 8311, at *1 (S.D.N.Y. April 15, 2002) (considering motions and noting "this Court's order of March 25, 2002, which adopted the report and recommendation of Magistrate Judge Gorenstein.")

judgment as a matter of law and the Plaintiff's section 1983 claim on this ground must be dismissed. However, were the Plaintiff able to prove a compensable injury stemming from the alleged constitutional violation, he may well be able to survive Defendants' motion. Because the Plaintiff is pro se, the court will provide him the opportunity to avoid dismissal of this claim by granting him time to plead a compensable injury. The court notes that it has not taken a position at this time as to whether the Defendants violated the Plaintiff's fourth amendment rights when they seized his credit card information. However, if the Plaintiff can submit triable issues of fact as to whether he suffered a compensable fourth amendment injury, this court will reconsider Defendants' motion to dismiss (and in the alternative for summary judgment) on this claim.

At this time, Defendants Gillespie and Dato's motion to dismiss the Plaintiff's section 1983 claim based on an unreasonable search and seizure conducted in violation of the Fourth Amendment is denied. The Plaintiff is granted sixty (60) days from the date of the issuance of this Order to submit to the court evidence of a compensable fourth amendment injury that would sustain his section 1983 claim arising from the Defendants' seizure of his credit card information without a warrant or subpoena. The Defendants will have two (2) weeks from the date of the Plaintiff's submission, if any is made, to respond.

**B.      Plaintiff's Section 1985 Conspiracy Claim**

Construing the Plaintiff's papers to make the strongest possible arguments on his behalf, the Plaintiff has alleged in his second cause of action a conspiracy to violate his civil rights. The Plaintiff alleges that Detectives Gillespie and Dato conspired to give false testimony at an evidentiary hearing. The complaint states that Gillespie and Dato "violated Plaintiff's rights when they made false statements under oath at the March 27, 1996 evidentiary hearing when

they both testified that they did not tell Agent Charles McNair, from South Carolina, that: 'Fat Cat Nichols, along with Tony Feurtado had Edward Byrnes executed.'" (Am. Compl. at 4).[8]

The Defendants have raised immunity as a defense to this charge, asserting that under the Supreme Court case of Briscoe v. LaHue, 460 U.S. 325 (1983), they are entitled to absolute immunity and cannot be liable for damages for testimony given in a judicial proceeding – even if such testimony was false. (See Defs.' Mot. at 12-13). Briscoe holds that police officers acting as witnesses in a judicial proceeding are absolutely immune from Section 1983 damages liability. Briscoe, 460 U.S. at 341-5. Therefore, to the extent that the Plaintiff seeks relief based on false testimony given at the hearing, the Defendants are not liable.

However, to the extent that the Plaintiff alleges a *conspiracy* to testify falsely committed by the Defendants (which is the Plaintiff's stronger argument and therefore deemed to be asserted by this court), the immunity analysis differs. On this point, the Plaintiff appropriately calls the court's attention to the Second Circuit case of Dory v. Ryan, 25 F.3d 81 (2d Cir. 1994). In Dory, the Circuit Court explicitly held that police officers who serve as witnesses in judicial proceedings are not entitled to immunity for extra-judicial conspiracies to give false testimony. Dory, 25 F.3d at 83-4. The Plaintiff's complaint can be read to allege as much, and therefore I find that the Defendants are not absolutely immune from this charge.

However, the Plaintiff's conspiracy claim nonetheless fails because the Plaintiff has not

---

[8] The Plaintiff further explained the surrounding facts in his motion papers. Agent McNair testified before the Grand Jury and at the evidentiary hearing that the Plaintiff and others were responsible for killing a New York City Police Officer named Edward Byrnes. McNair testified under oath that he learned this information from Gillespie and Dato. At the March 27, 1996 evidentiary hearing, Gillespie and Dato both testified under oath that they had not passed this information to McNair. (See Pl.'s Sur-Reply at 5).

alleged facts sufficient to prove that he is entitled to relief. To state a cause of action under Section 1985(3), a plaintiff must allege the following: (1) a conspiracy (2) for the purpose of depriving a person or class of persons of the equal protection of the laws, or the equal privileges and immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States. See Thomas v. Roach, 165 F.3d 137, 146 (2d Cir. 1999). To proceed beyond a motion to dismiss in a conspiracy action, specific facts supporting the claim must be alleged. "A complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss. Sommer v. Dixon, 709 F.2d 173, 175 (2d Cir.1983).

The Plaintiff has failed to allege facts which would either overcome the Defendants' 12(b)(6) motion or raise a genuine issue of material fact concerning this alleged conspiracy. He asserts and provides support only for the fact that Gillespie and Dato both falsely provided the same substantive testimony at the evidentiary hearing. "Because plaintiff has alleged no facts at all from which a meeting of the minds between [Gillespie and Dato] on a course of action intended to deprive plaintiff of [his] constitutional rights can be inferred, [his] allegations are insufficient to survive a motion for dismissal." Hickey-McAllister v. British Airways, 978 F.Supp. 133, 139 (E.D.N.Y. 1997) (Gershon, J.). Accordingly, the Plaintiff's Section 1985(3) claim is dismissed.

### C.    Liability of Defendants Kelly and O'Neill

The Plaintiff has sued Police Commissioner Raymond Kelly and Deputy Inspector Brian O'Neill for their roles in the alleged violations of Plaintiff's civil rights. In his initial complaint,

the Plaintiff did not bring suit against Kelly and O'Neill by name, but rather identified them as "Unknown Chief of Police New York City" and "Unknown Commander of O.C.I.D." (Organized Crime Investigation Division). In a <u>Valentin</u> Order dated January 14, 2005, issued by Magistrate Judge Lois Bloom, the court construed "the Unknown Chief of Police" to refer to Commissioner Kelly, and the "Unknown Commander of O.C.I.D." to refer to the "highest ranking officer in the Organized Crime Investigation Division." (<u>See</u> Reply Declaration of Anna Nguyen Ex. K). The court requested that Corporation Counsel provide information to the Plaintiff such that he could properly serve these two individuals. Corporation Counsel did so, and thus Kelly and O'Neill were added by name as Defendants in the Plaintiff's Amended Complaint.

As a preliminary matter, given that Defendants' counsel followed the directive of Judge Bloom's January 14, 2005 <u>Valentin</u> Order, this court finds there is no merit to the Plaintiff's allegation that the defense counsel's production of these names "was done purposely to obfuscate" this litigation. (<u>See</u> Pl.'s Opp. at 14). Nonetheless, there is a legitimate dispute among the parties as to whether Kelly and O'Neill were the persons occupying the positions of Police Commissioner and Head of OCID at the time of the alleged constitutional violations. However, I find that this issue is immaterial to the instant motion because the Plaintiff has failed to state a claim upon which relief can be granted with respect to either supervisor, whether Kelly and O'Neill or others occupying their respective positions in the NYPD. Accordingly, the issue of whether Kelly and O'Neill are the proper parties to this action need not be addressed.

It is well established in this circuit that in order to maintain an action for damages under Section 1983, the plaintiff must prove personal involvement by the Defendants in his deprivation

of rights.  "'[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'"  Williams v. Smith, 781 F.2d 319, 323 (2d Cir. 1986) (citing McKinnon v. Patterson, 568 F.2d 930, 934 (2d Cir. 1977)).  "The general doctrine of respondeat superior does not suffice and a showing of some personal responsibility of the defendant is required." Al-Jundi v. Estate of Rockefeller, 885 F.2d 1060, 1065 (2d Cir. 1989) (internal quotation and citation omitted).

There are, of course, instances where a supervisor will be held liable under Section 1983. For example, a supervisory official can be liable if he learns of a constitutional violation through a report or appeal but fails to remedy the wrong.  See e.g., United States v. Oswald, 510 F.2d 583, 589 (2d Cir. 1975).  Additionally, a supervisor who creates a policy or custom which permits unconstitutional practices can be held liable.  See e.g., Duchesne v. Sugarman, 566 F.2d 817, 830-31 (2d Cir. 1977).  And finally, a supervisory official can be personally liable for his gross negligence in managing subordinates who violate plaintiffs' constitutional rights.  See, e.g., Villante v. Dept. of Corr. of City of New York, 786 F.2d 516, 519 (2d Cir. 1986).  In sum, "[s]upervisory officials named as defendants cannot be held accountable for the actions of their subordinates unless they were personally involved in, had knowledge of, or approved of the alleged unconstitutional acts."  Evans v. Phoenix, 96 Civ. No. 0185, 1997 WL 88843, * 2 (E.D.N.Y. Feb. 18, 1997) (Johnson, J.)

In the instant case, the Plaintiff has failed to allege any such involvement on the part of Commissioner Kelly and Inspector O'Neill (or any such supervisor occupying their positions within the NYPD).  The extent of the Plaintiff's allegations against these two defendants are that Gillespie and Dato acted "in conjunction with their superiors of the New York City Police

Department." (Am. Compl. at 3). "Other than listing [them] as [parties], plaintiff neither mentions, nor even alludes to [their] involvement" in the alleged unconstitutional events. Evans, 1997 WL 88843 at *2. The Plaintiff has failed to allege any facts that, if true, would support Section 1983 liability against these defendants. Therefore, the Plaintiff's claims asserted against Defendants Kelly and O'Neill are dismissed.

       **D.**       **Statute of Limitations**

As I find that the Plaintiff's constitutional claims fail because Plaintiff has not alleged facts that would entitle him to relief, I need not reach the statute of limitations issue argued in the parties' briefs.

**IV.**       **Conclusion**

For the aforementioned reasons, the Defendants' motion to dismiss for failure to state a claim upon which relief can be granted brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, which has been converted by this court into a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, is hereby GRANTED in part and DENIED in part.

The Plaintiff's 42 U.S.C. §§ 1983 and 1985 claims alleging false arrest in criminal case 95-CR-669 and a conspiracy to violate his civil rights are hereby dismissed as to all Defendants. With respect to the Plaintiff's section 1983 claim alleging an illegal search and seizure committed in violation of the Fourth Amendment, the claim is dismissed with respect to Defendants Kelly and O'Neill only. Defendants Gillespie and Dato's motion to dismiss this claim is denied at this time. The Plaintiff is granted sixty (60) days from the date of the issuance of this Order to submit to the court evidence of a compensable Fourth Amendment injury that

would sustain this claim. The Defendants will have two (2) weeks from the date of the Plaintiff's submission, if any is made, to respond. Upon submissions by all parties, the court will reevaluate this claim.

If the Plaintiff fails to submit within the time period allotted credible evidence demonstrating that he has suffered a compensable Fourth Amendment injury, the Plaintiff's 42 U.S.C. § 1983 claim against Defendants Gillespie and Dato alleging violations of his Fourth Amendment rights will be dismissed for failure to state a claim upon which section 1983 damages can be awarded.

SO ORDERED.


Dated: November 17, 2005                    _____/s/_____
          Brooklyn, NY                               Nicholas G. Garaufis
                                                     United States District Judge